IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATRICIA BYCE, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:09-CV-1912-RWS |
| PRUCO LIFE INSURANCE : | |
| COMPANY, : | |
| Defendant. : | |
| : | |
| : | |

**ORDER**

This case comes before the Court on Defendant's Motion for Summary Judgment [51-1] and Request for an Oral Hearing [51-30], Plaintiff's Cross-Motion for Partial Summary Judgment [56], Plaintiff's Motion for Oral Argument on her Cross-Motion for Partial Summary Judgment [57], Defendant's Motion to Strike Plaintiff's Cross-Motion for Partial Summary Judgment [66], and Plaintiff's Motion Requesting Consideration of Plaintiff's Cross-Motion for Partial Summary Judgment [68]. After a review of the record, the Court enters the following Order.

**I. Summary of the Relevant Facts**

Plaintiff Patricia Byce was the beneficiary and owner of a policy of life insurance that was underwritten by the Defendant, Pruco Life Insurance Company ("Pruco"). Def.'s SMF, Dkt. No. [51-28] at ¶ 1. The policy lapsed in March 2005 due to non-payment but was subsequently reinstated on May 11, 2007. Def.'s SMF, Dkt. No. [51-28] at ¶ 2; Pl.'s Opp. SMF, Dkt. No. [55-17] at ¶ 2.

On July 31, 2008, Mr. Mills M. Byce, Jr., Plaintiff's husband and insured under the policy, committed suicide. Def.'s SMF, Dkt. No. [51-28] at ¶ 7. As a result, Plaintiff filed her claim paperwork for the aforementioned policy on August 22, 2008. Id. at ¶ 8. After various communications and a meeting between Plaintiff and Defendant, the Plaintiff sent a letter on October 28, 2008 which stated in relevant part that she requested "immediate payment under the 2 policies purchased through Prudential." Dkt. No. [51] at Ex. O. As well, on December 2, 2008, Plaintiff's counsel sent a letter to the Defendant which quoted O.C.G.A. § 33-4-6 and alleged that the Defendant was engaging in a "delay tactic." Dkt. No. [51] at Ex. X. The letter also stated that Plaintiff did not "waive her right to sue Prudential at any time for its bad faith refusal to pay

her." Id. Approximately three months later, on March 12, 2009, Defendant paid Plaintiff the $500,000 face amount under the policy, plus $31,638.83 in interest. Def.'s SMF, Dkt. No. [51-28] at ¶ 26.

On May 20, 2009, Plaintiff originally filed this action in the Superior Court of DeKalb County. See Dkt. No. [1-2] at 12. Defendant removed the action to federal court and has since moved for summary judgment on all counts. In response, Plaintiff has cross-moved for partial summary judgment. However, Defendant moves to strike this cross-motion for violating the filing deadline, and Plaintiff seeks leave to file it. As well, both parties have requested oral argument on these issues. The Court will consider each motion in turn.

**II. Discussion**

    A. Preliminary Matters

Initially, both parties have requested oral argument on their respective summary judgment motions. As the Court finds the briefings sufficient on these issues, the Court **DENIES** Plaintiff's Motion for Oral Argument [57] and Defendant's Request for an Oral Hearing [51-30].

Additionally, Defendant moves to strike, and Plaintiff seeks leave to file, Plaintiff's Cross-Motion for Partial Summary Judgment.  Plaintiff filed her Cross-Motion for Partial Summary Judgment [56] on September 29, 2010, or thirty-four days after the Scheduling Order's summary judgment deadline. See Joint Prelim. Rep., Dkt. No. [7] (setting the summary judgment motion deadline as within 20 days after the close of discovery); Sch. Ord., Dkt. No. [9] (accepting the parties' Joint Preliminary Report as the Order of the Court); Ord., Dkt. No. [43] (extending discovery until 30 days after the July 7, 2010 Order, or August 6, 2010). When a filing deadline is missed, "the court may, for good cause, extend the time . . .on a motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. PRO. 6(b)(1)(B).

Here, Plaintiff argues that she acted with excusable neglect because, prior to Defendant's summary judgment filing, Defendant had taken the position that Plaintiff had made a demand under O.C.G.A. § 33-4-6. Specifically, Plaintiff points to Defendant's initial disclosure wherein the Defendant stated "[o]n or about October 28, 2008, Plaintiff sent a letter demanding immediate payment under both policies." Dkt. No. [6] at 13 (emphasis added).  Additionally,

4

Defendant's disclosure stated "[s]ome of [Plaintiff's counsel's] letters contained threats to sue Pruco and references to O.C.G.A. § 33-4-6." Id. at 14.

In response, Defendant argues that it challenged Plaintiff's demand allegation in its answers to both complaints in this matter.  See Ans., Dkt. No. [2] at ¶¶ 31, 42; Ans. to Am. Compl., Dkt. No. [25] at ¶¶ 32, 51, 60.  As well, Defendant challenges Plaintiff's excusable neglect rationale as her cross-motion for partial summary judgment extends beyond the demand issue into a separate and distinct burden of proof issue.

The Court finds that Plaintiff acted with excusable neglect insofar as the demand issue is concerned, but agrees with Defendant as to the standard of proof issue.  Defendant's answers did not clearly put the demand letter in issue. See, e.g. Ans. to Am. Compl., Dkt. No. [25] at ¶ 51 (stating in full, "Defendant denies the allegations set forth in Paragraph 51 [which contains a reference to the Plaintiff making a demand]. The October 28, 2008 letter speaks for itself as to form and content"). However, the Defendant affirmatively stated that Plaintiff had "demand[ed] payment" in Initial Disclosure Attachment F, which addressed the "detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading."

5

Dkt. No. [6] at 2.  This statement is inconsistent with a lack of demand defense, especially in light of the fact that Defendant now challenges whether the Plaintiff's word choice even demanded payment.  <u>See</u>, Def.'s MSJ, Dkt. No. [51-1] at 14 ("Further, Plaintiff never actually *demands* payment, but instead "respectfully requests immediate payment.").

Moreover, Defendant is not prejudiced.  Defendant responded in opposition to Plaintiff's Cross Motion and was even given additional time to make its response.  <u>See</u> Dkt. No. [63] (granting the Defendant more time to file a response to Plaintiff's Cross Motion for Partial Summary Judgment).

However, the Court does not find the same excusable neglect for Plaintiff's burden of proof section.  Plaintiff first raised this issue in her Cross-Motion and fails to offer a justification for her delay as to this issue.  Therefore, Plaintiff's Motion Requesting Consideration [68] is **GRANTED, in part** and **DENIED, in part**.  The Motion is granted as to the demand issue, but denied as to the burden issue.  As a result, Defendant's Motion to Strike [66] is **GRANTED, in part** and **DENIED, in part**.  This motion is granted as to the burden issue, but denied as to the demand issue.

6

B. Cross Motions for Summary Judgment

Plaintiff and Defendant have cross-moved for summary judgment on whether Plaintiff's contacts with Defendant ever constituted a demand under O.C.G.A. § 33-4-6. Additionally, Defendant moves this Court to find, as a matter of law, that its actions were not "frivolous or unfounded."

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

### 1. Demand Requirement

O.C.G.A. § 33-4-6 authorizes a supplemental award of up to fifty percent of the insurer's underlying liability, plus attorney's fees, when the insurer refused to make payment under a relevant policy in "bad faith," sixty days after the insured demanded payment. O.C.G.A. § 33-4-6(a). As the statute works as a penalty, its requirements are strictly construed. Bayrock Mortg. Corp. v. Chicago Title Ins. Co., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007). In order to take under the statute, the insured must first prove "that a demand for payment was properly and timely lodged against the insurer prior to the filing of the suit." Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F. Supp. 2d 1340, 1355 (N.D. Ga. 2001).

The purpose of the demand is notice. Id. at 1356. The insurer must know that it is facing a bad faith claim so that it can decide whether to make payment. Id. Importantly, the demand must be made when immediate payment is due. Southern Realty Mgmt., Inc. v. Aspen Specialty Ins. Co., 2008 WL 4787511, at *2 (N.D. Ga. 2008). But, the statute does not set out any requisite demand language–the language "must merely be sufficient to alert the insurer that bad faith is being asserted." Id. At bottom, under Georgia law, "the mere specter of a lawsuit at a time when immediate payment is due appears to be enough to constitute a demand under O.C.G.A. § 33-4-6." Id.

Here, Plaintiff and her counsel sent Defendant two relevant letters. On October 28, 2008, Plaintiff sent the Defendant a letter which stated in full:

> I have provided all information requested by the investigator representing Prudential Insurance Company. At this time, I respectfully request immediate payment under the 2 policies[1] purchased through Prudential. As you are well aware, Mills M. Byce, Jr., passed away on July 31, 2008.

---

[1] There was also a "key man" life insurance policy taken out insuring Mr. Byce, but Plaintiff is not the beneficiary so that policy is irrelevant to this suit. See Def.'s SMF, Dkt. No. [51-28] at ¶ 6.

10

Dkt. No. [51-16] at Ex. O.  While Defendant argues otherwise, this Court finds that this letter was a demand for payment under the policy.  Plaintiff's use of respectful language does not overcome the clear intent of the letter which was to demand payment.  However, the Court does not agree with Plaintiff that this letter on its own constituted a demand for O.C.G.A. § 33-4-6 purposes.  The letter does not cite the phrase "bad faith," the statutory language, or even the code section as shorthand.  See Arrow Exterminators, 136 F. Supp. 2d at 1357.

Additionally, though, on December 2, 2008, Plaintiff's counsel sent a letter to Defendant. Id. at Ex. X.  This letter is five pages long.  The first four pages of the letter express distaste with the way the claim has been handled and challenge the Defendant's assertions that it does not have all of the relevant information in this case.  Id.  The last page, however, cites in full O.C.G.A. § 33-4-6 and states in relevant part:

> Prudential has failed to timely pay under its life insurance policies when those policies were due and payable.  Its basis for failing to pay is that it is "still awaiting" certain records that are readily available or that have already been provided to its representative.  These assertions are not made in good faith, are entirely contrary to the history of this matter and amount to nothing more than a delay tactic.
>
> Ms. Byce does not by this letter waive her right to sue Prudential at any time for its bad faith refusal to pay her as a beneficiary under

[the insurance policies].
Id.

Defendant maintains that the letters cannot be taken in combination to constitute a demand, and even if they can, Plaintiff's counsel's letter does not actually state that she will sue the Defendant but rather states Plaintiff has "reserved her right to sue."  Plaintiff argues that she can use multiple "transactions" to satisfy her demand requirement citing Mutual Savings Life Insurance Co. v. Hines, 100 S.E.2d 466, 472 (Ga. Ct. App. 1957).  In that case, the plaintiff presented his policies to the insurer for payment and prepared and sent the requisite proofs of loss under his policies.  Id.  He was then told by the insurer that it was not liable under the accidental life policy.  Id.  Some time later, the insurer again denied its liability in response to a letter sent by the plaintiff's attorney.  Id.  The court ruled that "[a]ll of these acts took place at a time when the policy was due and payable, and the transactions constituted a demand and refusal to pay within the purview of the Code . . ."  Id. (emphasis added).

The Court finds the Georgia Court of Appeals' ruling consistent with the purpose of the demand requirement–to put the Defendant on notice.  These letters taken together clearly indicate that, at minimum, a "mere specter" of a

12

bad faith lawsuit existed. Plaintiff's counsel stated that Defendant's assertions were "not made in good faith" and were a "delay tactic." Further, counsel's letter cited the bad faith statute in full. Any reasonable insurance company would understand these letters to constitute a demand and expect the sixty-day window to open.

However, Defendant further argues that the demand was not timely as the policy was not then "immediately payable." Defendant's argument hinges on its "right to investigate," which it appears to glean from the negative of the following policy statement, "[e]xcept for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date," Policy, Dkt. No. [51-2] at 6, meaning, that it <u>can</u> contest the policy if the Insured dies within two years.

Plaintiff, in contrast, argues that the policy was then-payable, citing O.C.G.A. § 33-25-3(11). That provision states that

> when a policy shall become a claim by the death of the insured, settlement **shall** be made upon receipt of due proof of death and, at the insurer's option, surrender of the policy and proof of the interest of the claimant. If an insurer shall specify a particular period prior to the expiration of which settlement shall be made, the period shall not exceed two months from the receipt of such proofs.

13

O.C.G.A. § 33-25-3(11) (emphasis added). Under this statute, Plaintiff argues, the policy shall become payable at a maximum of two months after the insured presents her proof of loss. Here, Defendant's policy states that it will pay the contract "promptly . . . subject to all the provisions of this contract." Dkt. No. [51-2] at 1. Therefore, Plaintiff argues, even if "promptly" is held to be the maximum under the statutory scheme, Plaintiff's policy came due two months after the claim paperwork was submitted, or October 22, 2008. See Def.'s SMF, Dkt. No. [51-28] at ¶ 8 (stating Plaintiff submitted her paperwork on August 22, 2008). Since both of Plaintiff's letters were sent after October 22, 2008, Plaintiff argues her demand was timely.

The Court concurs. The statute makes clear that in order to sell life insurance in Georgia, each insurer must have terms which comply with the statutory mandates, including the payment term. O.C.G.A. § 33-25-3. Thus, payment on the policy came due no later than two months after the paperwork was submitted. However, contrary to Plaintiff's contention, so holding does not make an insurer *per se* liable for bad faith if the insurer chooses to extend its investigation beyond that point. Rather, assuming the insurer was diligent and not "frivolous and unfounded" in its investigation, its only burden would be to

14

pay interest. See O.C.G.A. § 33-25-10. The insurer cannot be held liable for bad faith under O.C.G.A. § 33-4-6 as a matter of law if there is a "reasonable defense which vindicates the insurer's good faith." Leader Nat'l Ins. Co. v. Kemp & Son, Inc., 375 S.E.2d 231, 235 (Ga. Ct. App. 1988).

Further, the statutory payment period only commences the insured's ability to file a demand. The insurer will still get an additional sixty days after the demand to investigate and determine if continuing the investigation past the sixty-day bad faith period is warranted. See O.C.G.A. § 33-4-6. Therefore, the Court **GRANTS** Plaintiff's Cross Motion for Partial Summary Judgment [56] in so far as finding the demand requirement is met, and correspondingly **DENIES** Defendant's Motion for Summary Judgment [51] insofar as it requested a finding that the demand requirement was not met.

### 2. Frivolity of the Investigation

Defendant next argues that even if a proper demand was made, its investigation was not frivolous and unfounded; therefore, it should not be held liable for bad faith. Under the statute, the "insured bears the burden of proving bad faith, which is defined as any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the

15

terms of the policy." Johnston v. Companion Prop. & Cas. Ins.Co., 318 Fed App'x 861, 868 (11th Cir. 2009).[2] "The question of bad faith is for the jury unless it can be said that as a matter of law there was a reasonable defense which vindicates the insurer's good faith." Leader National, 375 S.E.2d at 235.

Here, due to the genuine issues of material fact, the Court cannot say as a matter of law that the Defendant acted reasonably. By way of one example, there is a dispute about when the deceased's medical records were actually obtained, when they could have been obtained, or whether they even needed to be obtained in the first place. Compare, Def.'s SMF, Dkt. No. [51-28] at ¶ 24 with Pl.'s Opp. SMF, Dkt. No. [55-17] at ¶ 24. This fact issue squarely goes to

---

[2]Plaintiff cites Reserve Life Ins. Co. v. Ayers, 121 S.E.2d 649 (Ga. 1961) and Piedmont So. Life Ins. Co. v. Gunter, 132 S.E.2d 527 (Ga. Ct. App. 1963) for the proposition that "the burden of proof, where unusual and unnecessary delay is shown, should be on the company, to give a good faith reason for the delay or it will be presumed to be vexatious and subject to bad faith." See. Pl.'s Opp. Br., Dkt. No. [55] at 18, 21. However, that statement is taken out of context from the cases themselves. In both of those cases, payment was never made because the insurers claimed the insureds committed fraud, an affirmative defense. See Reserve Life, 121 S.E.2d at 651; Piedmont Southern, 132 S.E.2d at 529. Georgia courts have long recognized that the "burden [is] upon the insurer to prove an affirmative defense, such as fraud on the part of the insured in obtaining the policy, or that the loss apparently covered by the policy came within an exclusionary clause contained in the policy." Reserve Life, 121 S.E.2d at 654. Here, Defendant did not raise fraud as an affirmative defense to non-payment; rather, it paid the claim and alleges that its "contestability" clause is a "reasonable ground to contest the claim." As such, Plaintiff retains the burden of proof.

16

whether Pruco's investigation was reasonable or, rather, was a frivolous delay tactic as alleged. Therefore, Defendant's Motion for Summary Judgment [51] is **DENIED**.

### III. Conclusion

The Court **DENIES** Plaintiff's Motion for Oral Argument [57] and Defendant's Request for an Oral Hearing [51-30].  Plaintiff's Motion Requesting Consideration [68] is **GRANTED, in part** and **DENIED, in part**. The motion is granted as to the demand issue, but denied as to the burden issue. Defendant's Motion to Strike [66] is **GRANTED, in part** and **DENIED, in part**. This motion is granted as to the burden issue, but denied as to the demand issue.

The Court **DENIES** Defendant's Motion for Summary Judgment [51]. Plaintiff's Cross-Motion for Partial Summary Judgment [56] is **GRANTED, in part** and **DENIED, in part**.  The motion is granted in so far as finding the demand requirement is met, but is otherwise denied.

The parties shall file a proposed consolidated pretrial order within thirty (30) days of the entry of this Order.

**SO ORDERED** this __21st__ day of January, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE